UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| RACHEL CHRISTINE G., <br><br>   Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>   Defendant. | Case No.: 1:23-cv-00309-AKB-REP <br><br> **REPORT AND RECOMMENDATION** |

Pending is Plaintiff Rachel Christine G.'s Complaint (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

I. **ADMINISTRATIVE PROCEEDINGS**

On January 24, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 15, 2014 (later amended to September 13, 2018). The claim was originally denied on July 23, 2021, and again on reconsideration on October 7, 2021. On October 21, 2021, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On April 20, 2022, ALJ Stephen Marchioro held an online video hearing (due to the COVID-19 Pandemic), at which time Plaintiff, appearing with her attorney Jacob Bernhardt, testified. David C. Perry, an impartial vocational expert, also appeared and testified at the same hearing.

On June 2, 2022, the ALJ issued a decision denying Plaintiff's claim, finding that she was not disabled within the meaning of the Social Security Act. Plaintiff timely requested review

**REPORT AND RECOMMENDATION - 1**

from the Appeals Council. On May 16, 2023, the Appeals Council denied Plaintiff's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff is now represented by attorney Brad Parkinson. Having exhausted her administrative remedies, she brings this case. She contends that the ALJ erred in two ways: (i) by incorrectly evaluating her generalized anxiety disorder; and (ii) by improperly discounting the opinion on her treating therapist, Jana Bruno, LCPC ("LCPC Bruno"). Pl.'s Brief at 8-18 (Dkt. 16). Plaintiff requests that the Court vacate the ALJ's decision and remand this matter for further administrative proceedings, including a new decision. *Id*. at 19.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). If there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.

**REPORT AND RECOMMENDATION - 2**

*Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015).  Considerable weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  REPORT

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied regardless of her medical condition,

age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has not engaged in SGA, the analysis goes to the second step. Here, the ALJ found that Plaintiff had not engaged in SGA during the period from September 13, 2018 (the amended alleged onset date) through December 31, 2019 (the date last insured). AR 17.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that, through the date last insured, Petitioner had the following severe medically determinable impairments: "obesity and generalized anxiety disorder." AR 17.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner's above-listed medically determinable impairments, while severe, did

**REPORT AND RECOMMENDATION - 4**

not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. AR 18-20.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567 except she could only frequently climb ramps, stairs, ladders, ropes, and scaffolds. She could only occasionally interact with coworkers and could not perform tandem tasks with coworkers. She could not interact with the public as part of job duties.

AR 20.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Plaintiff was unable to perform her past relevant work as a claims examiner and office assistant, but nonetheless was capable of working full-time in the following occupations: laundry worker,

**REPORT AND RECOMMENDATION - 5**

routing clerk, and document scanner. AR 23-24. Based on these findings, the ALJ concluded that Plaintiff was not under a disability at any time from September 13, 2018 (the amended alleged onset date) through December 31, 2019 (the date last insured). AR 25.

**B.     Analysis**

Plaintiff argues that the ALJ committed the following errors in finding her not to be disabled: (i) the ALJ failed to properly analyze her generalized anxiety disorder; and (ii) the ALJ failed to properly consider the opinions of LCPC Bruno. Pl.'s Brief at 1, 8-18 (Dkt. 16). Each of these arguments is addressed below.

   1. <u>The ALJ Erred in His Evaluation of Plaintiff's Generalized Anxiety Disorder</u>

In cases alleging disability due to a mental impairment, the ALJ must assess the severity of that impairment by following a "special technique," known as the Psychiatric Review Technique ("PRT"). *See generally* 20 C.F.R. § 404.1520a(a). The PRT requires the ALJ to rate the degree of the claimant's limitation in four broad functional areas: (i) understand, remember, or apply information; (ii) interact with others; (iii) concentrate, persist, or maintain pace; and (iv) adapt or manage oneself. *Id*. at § 404.1520a(c)(3). Generally, if the limitation is rated as "none" or "mild" in the four areas, the impairment is not severe at step two of the sequential process, "unless the evidence otherwise indicates that there is more than a minimal limitation" in the claimant's ability to perform work activities. *Id*. at § 404.1520a(d)(1). If, however, the impairment is severe, the ALJ proceeds to step three of the sequential process to consider whether it meets or medically equals the mental disorders on the List of Impairments. *Id*. at § 404.1520a(d)(2).

In this case, the ALJ determined that Plaintiff's generalized anxiety disorder significantly limited her ability to perform basic work functions and, thus, constituted a medically determinable impairment. AR 17. Then, through the PRT, the ALJ found that Plaintiff had a

**REPORT AND RECOMMENDATION - 6**

moderate limitation in interacting with others and mild limitations in the other three areas. AR 19-20. Accordingly, the ALJ concluded that Plaintiff's generalized anxiety disorder significantly limited her ability to perform basic work activities and was therefore severe at step two of the sequential process. AR 17. But because Plaintiff's limitations were not marked or extreme, Plaintiff's generalized anxiety to did not satisfy the requirements of Listing 12.06 at step three of the sequential process and Plaintiff's claim proceeded.

Plaintiff does not challenge the ALJ's step-two conclusion, but nevertheless argues that remand is required because (i) the ALJ insufficiently applied the PRT when evaluating her generalized anxiety disorder at step three of the sequential process; (ii) the ALJ improperly rejected her subjective complaints when applying the PRT; and (iii) the ALJ failed to incorporate all of her mental limitations within her RFC. Pl.'s Brief at 8-15 (Dkt. 16). The undersigned *ultimately* agrees, though not without a qualification.

To begin, Plaintiff repeatedly insists that, when evaluating mental impairments via the PRT, the ALJ is required to provide an "adequate narrative rationale " to justify the findings surrounding the four above-referenced functional areas. Pl.'s Brief at 11, 12, 14 (Dkt. 16) (citing *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721 (9th Cir. 2011)). She in turn argues that the ALJ fell short of this purported mandate which now justifies remand. Except Plaintiff overstates the extent of *Keyser's* alignment with her position.

In *Keyser*, the Ninth Circuit rejected an ALJ's decision that "did not document the ALJ's application of the [PRT] and did not include a specific finding of limitation in any of the functional areas. The decision simply referenced and adopted the [PRT] completed earlier by [the state agency medical consultant]." *Keyser*, 648 F.3d at 726 ("[T]he ALJ did not state his findings as to the four functional areas as required by the [PRT]."). And since the state agency medical consultant had concluded that the claimant's impairment was not severe, the ALJ

**REPORT AND RECOMMENDATION - 7**

likewise failed to consider whether the impairment met or equaled a listed impairment at step three of the sequential process. *Id*. at 727.

In contrast, the ALJ here resolved step two of the sequential process in Plaintiff's favor and found that her generalized anxiety disorder *was* severe. AR 17. Additionally, the ALJ here made explicit findings as to the four functional areas to be assessed within the PRT: he plainly explained why Plaintiff had (i) no more than mild limitations in understanding remembering or applying information; (ii) no more than moderate limitations in interacting with others; (iii) no more than mild limitations with concentration, persistence, or pace; and (iv) no more than mild limitations in adapting or managing herself. AR 19-20. *Keyser* does not require the ALJ to be more specific than that. *Keyser*, 648 F.3d at 726 (characterizing (and rejecting) a requirement to document the considerations underlying the four functional area findings as unnecessarily "extensive," but requiring the ALJ only to incorporate the "mode of analysis" into the findings and conclusions); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1078 (9th Cir. 2007) ("The ALJ clearly met this requirement by rating and assessing Hoopai's limitations in each of these four functional areas.").[1] Plaintiff's argument in this discrete respect is therefore without merit.

But Plaintiff also argues that the ALJ's substantive consideration of Plaintiff's generalized anxiety disorder using the PRT is not without its own problems. *See* Pl.'s Brief at 9-

---

[1] Citing to *Hoopai*, Defendant makes this point too. Def.'s Brief at 2-3 (Dkt. 18). In response, Plaintiff tries to limit *Hoopai's* application only to step two – not step three – of the sequential process to then distinguish *Hoopai's* application to the instant action. Pl.'s Reply Brief at 1-2 (Dkt. 19) (citing instead to 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) ("[T]he written decision must incorporate the pertinent findings and conclusion based on the [PRT]. *The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)*.") (emphasis added))). Plaintiff is incorrect. First, the regulations Plaintiff urges the Court to follow expressly speak to "the severity of the mental impairments" – a consideration at step two of the sequential process. *Id*. Second, *Keyser's* analysis (what Plaintiff claims to rely on) already contemplated this standard when assessing the ALJ's duties vis à vis the PRT. *See Keyser*, 648 F.3d at 725 (citing 20 C.F.R. § 404.1520a(e)(4)).

**REPORT AND RECOMMENDATION - 8**

12 (Dkt. 16). That is to say, even if ALJ may have technically satisfied the requirement to state the degree of limitation in each domain of the PRT (*supra*), his justification for those limitations still must be supported by substantial evidence to be upheld. Pl.'s Reply at 2 (Dkt. 19) (citing 42 U.S.C. § 405(g)). Plaintiff argues that the ALJ failed to meet this standard. On *that* point, the undersigned agrees.

For three of the four functional areas assessed using the PRT, the ALJ stated the following:

> In interacting with others, the claimant had a moderate limitation. The claimant alleged it was difficult to leave her home or interact with others, supportive of moderate limitations in such domain. *Nonetheless, she did leave home to attend appointments, shop, and drive her children places.* Thus, no more than moderate limitations are supported.
>
> With regard to concentrating, persisting or maintaining pace, the claimant had a mild limitation. The claimant alleged poor concentration, *yet the evidence shows she could read, drive, had no trouble writing, and was able to concentrate and pay bills.*
>
> As for adapting or managing oneself, the claimant had experienced a mild limitation. The claimant alleged mood fluctuations, *but she attended to her children, had no difficulties with activities of daily living, and attended to work tasks around her home.*

AR 19 (emphasis added).[2] Critically, however, nowhere in the ALJ's decision is there a discussion about these referenced activities of daily living generally, how they might operate to buttress the ALJ's conclusions reached at step three of the sequential process using the PRT, or how they might cut against Plaintiff's credibility. Simply saying that Plaintiff is able to perform these activities of daily living, without any analysis, does not make it true, especially given Plaintiff's repeated testimony to the contrary.

---

[2] The Court considers the ALJ's consideration of these three (not four) functional areas because that is how Plaintiff frames her argument about the ALJ's shortcomings in her briefing. *See* Pl.'s Brief at 10-12 (Dkt. 16) (omitting the ALJ's discussion about Plaintiff's ability to understand, remember, or apply information).

**REPORT AND RECOMMENDATION - 9**

For example, Plaintiff testified that her anxiety (i) prevents her from leaving the house, unless it is to take her two boys to occupational therapy or school (when her husband cannot), and even then, she stays in the car because it is her "cocoon" (AR 43, 47, 54-55); and (ii) prevents her from independently meeting her sons' needs "in terms of grocery shopping, getting their clothes, [and] getting them to and from school or activities" (AR 57). She even testified about how the recent COVID-19 pandemic paradoxically helped lessen her anxiety-related symptoms because it reduced her interactions with the public:

> It was the reduction in – COVID, because as awful as it is to say, COVID has just been – there's no expectation to go anywhere where it, you know, adds to the anxiety. With COVID around, there was no like trying to tell myself that I should be going these places because there's no expectation of it and no pressure for it. so I mean for me, I thought COVID was – I mean I'm not saying like it was a great thing, but I mean for me personally, it helped with – it helped with that, you know, that fight of, I should go somewhere. Oh my god, I'd have to go somewhere. But with COVID, it was just stay home. There's no – there's no thinking badly about staying home. I didn't have to take the kids to OT and I didn't have to take them to school because they did telehealth.

AR 50. Plaintiff's June 12, 2021 Function Report aligns with this testimony as it discusses similar struggles. There, Plaintiff pointed out how (i) her "anxiety makes leaving the house very difficult"; (ii) "interacting with people is mentally and physically draining"; (iii) she "cannot shower unless [her] husband is [t]here"; (iv) she "almost never go[es] to the store"; (v) she needs encouragement from her husband to do housework "to keep [her] mind busy"; (vi) she cannot go out alone; (vii) she has trouble counting change and "rarely" pays bills on time; and (viii) she "used to read a lot," but "now not much." AR 211-15.

In other words, Plaintiff insists that, owing to her generalized anxiety disorder, she cannot do the things that the ALJ says she can. But the ALJ never addresses the disconnect created by Plaintiff's conflicting testimony. Moreover, the ALJ's subsequent analysis of Plaintiff's overall credibility is unhelpful toward reconciling that divide because it only peripherally touches upon

**REPORT AND RECOMMENDATION - 10**

Plaintiff's ability to perform the daily activities that the ALJ specifically relied upon earlier when following the PRT. *See* AR 21-23.[3] The ALJ's assessment of Plaintiff's functional capabilities at step three of the sequential process is therefore incomplete. The Court takes no position on whether Plaintiff can or cannot engage in the referenced activities of daily living, only that the ALJ's conclusory statements that Plaintiff is capable of doing them are not currently supported by substantial evidence. Remand is recommended on this point.[4]

2.  <u>The ALJ Reasonably Considered the Medical Opinions From LCPC Bruno</u>

Plaintiff next argues that the ALJ erred in rejecting the restrictions assessed by her treating therapist, LCPC Bruno. Pl.'s Brief at 15-18 (Dkt. 16). In a March 31, 2022 "Mental Residual Functional Capacity" (completed over two years after Plaintiff last met the insured status requirements of the Social Security Act), LCPC Bruno highlighted how Plaintiff's generalized anxiety disorder contributes to marked functional limitations in (i) understanding and memory, (ii) sustained concentration and persistence, (iii) social interaction, and (iv) adaptation. AR 773-74. LCPC Bruno expounded on each of these limitations, correspondingly stating that Plaintiff (i) "has significant difficulty retaining information and focusing when information is being conveyed"; (ii) "has difficulty maintaining focus and sustained attention," and that "she

---

[3] Plaintiff separately takes issue with the ALJ's credibility analysis too. Pl.'s Brief at 12-15 (Dkt. 16) (challenging the ALJ's references to Plaintiff's conservative treatment and providing context to the ALJ's references to treatment notes). The undersigned will not address this alternate contention of error in any great depth, considering that the ALJ's credibility determination is naturally tethered to his assessment of Plaintiff's functional capabilities. Suffice it to say, for the reasons already described, the evidentiary landscape for questioning Plaintiff's credibility is unsettled. Remand on this point is therefore warranted on this broader issue as well to ensure that any reasons for discrediting Plaintiff's testimony are clear and convincing. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

[4] Plaintiff's related argument that the ALJ erred in failing to incorporate even her mild functional limitations into her RFC is subsumed by this recommended remand. *See* Pl.'s Brief at 14 (Dkt. 16). That is, the practical effect of remanding other issues may ultimately affect Plaintiff's RFC on remand.

**REPORT AND RECOMMENDATION - 11**

often struggles to make simple decisions due to anxiety and fear"; (iii) "has significant fear and anxiety when interacting with others," and that "she reports feeling terrified of conflict or social rejection"; and (iv) "has agoraphobia and has debilitating anxiety and panic attacks when traveling to unfamiliar places (and often to familiar places as well)," and that "she struggles with changes in her routine." *Id*.

>   The ALJ found these opinions largely unpersuasive, reasoning:
>
>   This opinion is not persuasive as it [is not] supported by Ms. Bruno's treatment notes during the period at issue. While the claimant did appear anxious, tearful, and with poor eye contact, her other abilities were within normal limits. For instance, she had normal affect, behavior, thought processes, perceptions, and appearances. The claimant's normal thought processes observed by Ms. Bruno do not support marked to extreme limitations in understanding, remembering, or concentrating.

AR 22. The ALJ further explained how Plaintiff's subjective reports to LCPC Bruno did not align with the reports she made to other providers, and that LCPC Bruno's opinions about Plaintiff were not consistent with other providers' opinions. *Id*. Plaintiff contends that the ALJ's justification for dismissing LCPC Bruno's opinions is inaccurate and thus unsupported by substantial evidence. Pl.'s Brief at 16-18 (Dkt. 16). The undersigned disagrees.

Because this case was filed after March 17, 2017, the revised regulations governing the ALJ's evaluation of medical evidence apply. *See* 20 C.F.R. § 404.1520c. Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see also* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Instead, the ALJ evaluates the "persuasiveness" of the opinions based on several factors. *Id*. These are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv)

**REPORT AND RECOMMENDATION - 12**

specialization, and (v) any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 405.1520c(c)(1)-(5). The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered. *Woods*, 32 F.4th at 792; 20 C.F.R. § 404.1520c(b)(2). The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3).

Courts review the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."). The ALJ's consideration of LCPC Bruno's opinions satisfies this standard.

Most obviously, LCPC Bruno's opinions about Plaintiff's functional limitations are not supported by her own treatment notes for Plaintiff. This does not mean that LCPC Bruno did not repeatedly remark about Plaintiff's anxious mood, tearful emotions, or poor eye contact; she absolutely did, as the ALJ acknowledged. *Supra*. But Plaintiff's reliance on these specific

**REPORT AND RECOMMENDATION - 13**

instances to validate LCPC Bruno's later opinions misses the point. Pl.'s Brief at 16-17 (Dkt. 16). There is no dispute that Plaintiff suffers from generalized anxiety disorder and that it has more than a minimal effect on Plaintiff's ability to perform work-related activities. AR 17 (ALJ finding that Plaintiff's generalized anxiety disorder is severe). However, this understood, severe impairment and related limitations do not *ipso facto* establish disability. *See Mullins v. Astrue*, 2012 WL 71708, at *6 (C.D. Cal. 2012) ("the existence of some pain does not constitute a disability if it does not prevent Plaintiff from working"); *see also Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989) (the social security program is "intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expend the class of recipients far beyond that contemplated by the statute"). More is needed.

But LCPC Bruno's treatment notes for Plaintiff during the relevant timeframe fail to supply that support. They acknowledge Plaintiff's anxiety and related symptomology – true – but they also routinely note that Plaintiff's affect, appearance, thought process, behavior, speech, and perception were all "[within normal limits]." *See, e.g.*, AR 298-300, 302-24, 335, 343-47. Moreover, they consistently list Plaintiff's "strengths" as:

> Capacity for analytical thinking. Capacity for openness. Good ability to establish rapport. Good capacity for empathy. Good expressive language and communication skills. Intellectual resources and insight. Interested in relationships with others. Motivated for treatment. Thinking is well organized.

*Id*. These point-in-time comments do not square with LCPC Bruno's much later opinions about Plaintiff's significant limitations in arguably several of these same functional capabilities. Absent more fulsome and corroborating treatment notes, LCPC Bruno's opinions are left unsupported. *Batson*, 359 F.3d at 1195 n.3 (brief and conclusory report did not provide support for limitations assessed in the absence of objective medical evidence in the physician's treatment notes); *Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical source

**REPORT AND RECOMMENDATION - 14**

supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'") (quoting 20 C.F.R. § 404.1520c(c)(1)).

This is not to say that Plaintiff is able to work. The contrasting treatment notes simply highlight how LCPC Bruno's opinions about Plaintiff's limitations are internally isolated and unsubstantiated. This speaks to the supportability of LCPC Bruno's opinions – a factor that an ALJ properly considers when assessing the persuasiveness of a medical provider's opinion. *Supra*. Plaintiff may believe that the ALJ did not give these opinions the weight they deserved, but the ALJ rationally considered them against the surrounding medical record and decided that they lacked supportability under the regulations.[5] Because the evidence can reasonably support the ALJ's conclusion in this respect, the Court should not substitute its judgment for that of the ALJ's – even if the Court were to have a different view. *Richardson*, 402 U.S. at 401. Remand is not recommended on this issue.

## IV.  RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's Complaint (Dkt. 1) be GRANTED, and that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this Report and Recommendation.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty (20) pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a

---

[5] Having considered both the supportability and consistency of LCPC Bruno's opinions, the ALJ may reject it as unpersuasive for lack of either one. *See Allen v. Kijakazi*, 2023 WL 2728857, at *1 (9th Cir. 2023). Here, LCPC Bruno's opinions are not properly supported under the regulations (*supra*). Substantial evidence therefore exists for the ALJ to discredit it.

response, not to exceed twenty (20) pages, to another party's objections within fourteen (14) days after being served with a copy thereof."



DATED: August 27, 2024

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 16**